UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| In re<br><br>**LESLIE KAY THOMPSON**,<br><br>Debtor. | Case No. **11-61284-7** |
| **LESLIE KAY THOMPSON**,<br><br>Plaintiff.<br><br>-vs-<br><br>**LOAN TO LEARN**, **MRS ASSOCIATES**, **USFB PRIVATE LOAN SPV, LLC**, **WELLS FARGO**, and **NATIONAL COLLEGIATE TRUST**,<br><br>Defendants. | Adv No. **11-00062** |

## MEMORANDUM OF DECISION

At Butte in said District this 7th day of June, 2012.

In this adversary proceeding the Plaintiff/Debtor Leslie Kay Thompson ("Leslie") seeks a discharge of student loan debt owed by her son Tyler Twardoski ("Tyler"), which she co-signed, under 11 U.S.C. § 523(a)(8) as an undue hardship. Defendant National Collegiate Trust ("NCT"), filed the only answer denying that Debtor satisfies the standard for undue hardship. Trial of this adversary proceeding was held at Missoula on May 1, 2012. Debtor appeared and testified, and her Exhibits ("Ex.") 1, 2, 3, 4, 5, and 6 were admitted into evidence along with NCT's Ex. A - through -O. At the conclusion of the parties' cases-in-chief the Court took the matter under advisement. After review of the record and applicable law, for the reasons set forth below judgment shall be entered in favor of Leslie granting her a partial discharge of her student

1

loan debt under § 523(a)(8).

Leslie appeared at trial and testified, represented by attorney Jennifer Ann Beardsley of Beardsley Law Office, Bonner, Montana. NCT was represented by Christian T. Nygren of Missoula. In addition to the exhibits, the Court took judicial notice that the federal poverty level income for one person in a family is $11,170 per year.

This Court has jurisdiction of this adversary proceeding under 28 U.S.C. § 1334(b). This is a core proceeding to determine dischargeability of a particular debt under 28 U.S.C. § 157(b)(2)(I). This Memorandum of Decision includes the Court's findings of fact and conclusions of law pursuant to F.R.B.P. 7052 (applying FED. R. CIV. P. 52 in adversary proceedings).

## FACTS

The approved Pretrial Order (Docket No. 29) sets forth the following agreed facts:

1. Plaintiff is a resident of the State of Montana.

2. Plaintiff was born May 14, 1960 and is 51 years old[1].

3. Plaintiff and her son Tyler Twardoski entered into five credit agreements and note disclosure statements for student loans to attend the University of Colorado Denver.

4. Plaintiff and her son Tyler Twardoski have defaulted on the payments under the terms of the student loan agreements.

The parties also filed a Stipulation (Dkt. 36) listing additional stipulated facts regarding the Plaintiff's debt under the student loan agreements, and stipulated admission of Ex. A through

---

[1] Now Leslie is 52.

O. Debtor stipulated that there are five (5) subject loans for which she is obligated to NCT, and that they all are educational loans as defined at § 523(a)(8). They are not, however, federal student loans but instead are private loans. Ex. C, F, I, L, and O are the payment histories for the 5 loans. Ex. F, I, L, and O each state that payments were made on those loans on 6/11/08. Ex. C reflects no payments on Loan 01. Leslie testified that she made the payments on the loans, and that Tyler has not made any payments. The stipulation and exhibits at Dkt. 36 list the balance of the 5 student loans as $29,526.88, $20,334.83, $22,565.54, $21,784.38, and $24,483.77, respectively, the total of which equals $118,695.40 as of October 28, 2011. At trial Leslie testified that the current balance was $120,966.71.

Leslie is divorced. She is not disabled. She testified that she graduated from high school in 1978 and graduated from beauty school, but has never worked as a beautician. Leslie co-signed the loan agreements so that Tyler could attend college in Denver, Colorado. She testified that Tyler graduated with a bachelor's degree in biology, that he is now pursuing a master's degree in education but is not otherwise employed except at temporary jobs during the summer, and is otherwise unemployed. Leslie testified that in 2008, when Tyler's student loans first came due, he had not finished his degree, and she paid NCT approximately $3,000 for forbearance. She testified that her ex-spouse is not providing any support.

Leslie testified that she lives in Creston, Montana, and is employed 15 miles away at Kalispell Regional Medical Center as a clerk. She has no specialized training. She testified that she works approximately 36 hours per week and earns $11.79 per hour, $911 per month and approximately $20,000 per year. From 1997 to 2003, Leslie worked as a teacher's assistant for $11 per hour, then she worked in Hamilton, Montana, where she earned $10 per hour for about 6

years before returning to Kalispell.

Ex. 3 is Leslie's social security statement issued by the United States. It shows Leslie's highest income was in the year 2004 when she earned $20,904, and in the last year listed, 2009, her income was $20,370 as shown on Ex. 4. Ex. 5 is her 2010 federal tax return and shows her 2010 income as $21,588. Ex. 6 is her 2011 federal return and shows her 2011 income was $20,144. She received a $300 federal refund this year which she described as typical.

The Debtor filed her Chapter 7 bankruptcy petition on June 30, 2011. Her amended Schedule F lists $161,626.17 in unsecured nonpriority claims, the majority of which are for her son's student loans which she co-signed. A no-asset report was filed by the Trustee on August 29, 2011, and a discharge of the Debtor was entered on October 12, 2011.

Schedule I, Ex. 1, lists Leslie's current income at Kalispell Regional Medical Center as $2,280.21 gross monthly wages, and $1,475.25 net monthly take home pay. Besides taxes and insurance, Ex. 1 shows a $68.41 monthly 401k contribution deducted from her pay, which Leslie testified was deducted automatically by her employer. She testified that her income recently was reduced when her employer reduced her work time by 3 hours per week, and she now works 36 hours per week and takes home $650 every two weeks.

Ex. 2 is Schedule J which lists Debtor's current monthly expenditures in the total amount of $1,662.00, showing a monthly deficit of $146.75. Ex. 2 lists expenses including but not limited to $600 rent, $30 for electricity and heating fuel, $60 telephone, $30 cable, $210 for food, $273.50 transportation, $63 for auto insurance, $102 personal hygiene and $55 in pet expenses. Nothing is included in Schedule J for payment of the student loan debt.

Leslie testified that her rent now is reduced to $550 for renting the lower level of a house

where she lives alone. She got rid of her cable bill, but testified that her fuel bill is $100, not $30. She testified that her actual monthly food expense is probably a little more than the $210 scheduled. She admitted that the $102 personal hygiene expense may be a little high. Her transportation expense is for a SUV which she borrowed from her sister. She testified that she is pretty conservative and has no other expenses she could cut.

Debtor filed her complaint in this adversary proceeding on October 3, 2011, seeking a determination that excepting the student loan debt from her discharge would impose an undue hardship on her under § 523(a)(8).

At trial Leslie testified that she plans on working until she dies. She testified she could possibly pay $50 per month to NCT for the student loan debt, but no more, but that the payments required for the student loan debts under Ex. B, E, H, K, and N would required a total of approximately $999[2] per month, not including interest, while her take home pay totals $1,300 per month. If she paid NCT $50 per month for 25 years, she testified, that would total $15,000 compared with the total debt of $120,966.71.

On cross examination Leslie was asked whether Tyler or she ever contacted the lenders regarding income contingent repayment plans for Tyler's student loans. Leslie testified that she does not know what such plans are, and has never discussed the William D. Ford Loan Program ("Ford Program") or other income contingent repayment plans with NCT, and no such repayment plan was offered to her by NCT.

The Court asked counsel about the availability of income contingent repayment plans such as the Ford Program. Debtor's counsel stated that the subject student loans are not

---

[2]The exact total of the payment amounts listed on Ex. B, E, H, K, and N is $999.08.

governed by federal law. NCT's counsel stated that it is possible for income contingent repayment plans to be offered to borrowers of private loans such as in the instant case, but that no income contingent repayment plans were discussed with this Debtor.

## DISCUSSION

Debtor argues that she has tried to arrange to pay her obligation for her son's student loans but was unable to arrange a payment she can afford. She contends that she is living at barely minimal standard of living, that she borrows rather than owns a car, and that she cannot pay the student loan debt from her assets or net income because it would require $504 per month for another 20 years even if she were to work to age 71 and NCT were to charge no interest on the student loan debt. She argues that the two loan payments, which NCT argues were made by her son, were made with her money and that she has made a good faith effort to pay the loan.

NCT contends that the Debtor has not satisfied the very high standard for a discharge of student loan debt under § 523(a)(8). NCT argues that no consistent payments have been made and thus the requirement for good faith effort to repay the loans has not been satisfied.

The discharge of student loan obligations is governed by 11 U.S.C. § 523(a)(8), which provides in relevant part after amendments made by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (Pub. L. 109-8) ("BAPCPA"), effective October 17, 2005:

> (a) A discharge under section 727, 1141, 1228(a) 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt –
>
> * * * *
>
> > (8) unless excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents, for –
> >
> > > (A)(I) an educational benefit overpayment or loan made,

6

> insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution; or
>
> (ii) an obligation to repay funds received as an educational benefit, scholarship, or stipend; or
>
> (B) any other educational loan that is a qualified educational loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986, incurred by a debtor who is an individual

*See, e.g., Educational Credit Management Corporation v. Nys (In re Nys)*, 446 F.3d 938, 942 n. 3 (9th Cir. 2006).

The Bankruptcy Code does not define "undue hardship." *Id.* at 943. Courts have held, however, that Congress intended the term to be interpreted strictly, and on a case-by-case basis. *Albert v. Ohio Student Loan Comm'n (In re Albert)*, 25 B.R. 98 (Bankr. N.D.Ohio 1982); *United States v. Brown (In re Brown)*, 18 B.R. 219 (Bankr. D. Kan. 1982); *Garmerian v. Rhode Island Higher Educ. Assistance Auth. (In re Garmerian)*, 81 B.R. 4 (Bankr. R.I. 1987). As the court in *Brown* noted:

> Mere financial adversity is insufficient, for that is the basis of all petitions in bankruptcy.

*Brown*, 18 B.R. at 222. On the other hand, the Bankruptcy Code does not require that the debtor "live in abject poverty . . . before a student loan may be discharged." *In re Mallinckrodt*, 260 B.R. 892, 900 (Bankr. S.D. Fla. 2001) (*quoting In re Faish*, 72 F.3d 298, 305 (3rd Cir. 1995)).

In a complaint to determine the dischargeability of student loan debt a debtor has the burden of proof to show evidence of undue hardship sufficient to discharge the debt. *In re Mason*, 464 F.3d 878, 881 (9th Cir. 2006); *In re Rifino*, 245 F.3d 1083, 1087-88 (9th Cir. 2001); *In*

*re Pederson*, 18 Mont. B.R. 429, 434 (Bankr. D. Mont. 2000), *In re Thomsen*, 17 Mont. 493, 499, 234 B.R. 506, 510 (Bankr. D. Mont. 1999).

The United States Court of Appeals for the Second Circuit established the *Brunner* test for determining "undue hardship" in the educational loan context. *In re Brunner*, 831 F.2d 395, 396 (2nd Cir. 1987). According to *Brunner*, in order to receive a discharge under 11 U.S.C. § 523(a)(8) a debtor must show:

> (1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans.

*Id.* The Ninth Circuit Court of Appeals adopted the *Brunner* test as the appropriate test for determining what constitutes undue hardship under 11 U.S.C. § 523(a)(8)(B). *Mason*, 464 F.3d at 881; *Nys*, 446 F.3d at 941 n.1, 943; *United Student Aid Funds v. Pena (In re Pena)*, 155 F.3d 1108, 1114 (9th Cir. 1998) ("We adopt the *Brunner* test as the test to be applied to determine the 'undue hardship' required to discharge student loans in bankruptcy pursuant to 11 U.S.C. § 523(a)(8)(B)"); *Rifino*, 245 F.3d 1083, 1087 (9th Cir. 2001). In *Pena*, the Court summarized the *Brunner* test as thus,

> First, the debtor must establish "that she cannot maintain, based on current income and expenses, a 'minimal' standard of living for herself and her dependents if forced to repay the loans." *Brunner*, 831 F.2d at 396. The court noted that this portion of the test "comports with common sense" and had already "been applied frequently as the minimum necessary to establish 'undue hardship.' " *Id.* (citing *In re Bryant*, 72 B.R. 913, 915 (Bankr.E.D.Pa.1987)).

> Second, the debtor must show "that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans." *Brunner*, 831 F.2d at 396. This second prong is intended to effect "the clear congressional intent exhibited in section 523(a)(8) to

> make the discharge of student loans more difficult than that of other nonexcepted debt." *Id*.
>
> The third prong requires "that the debtor has made good faith efforts to repay the loans . . . ." *Brunner*, 831 F.2d at 396. The "good-faith" requirement fulfills the purpose behind the adoption of section 523(a)(8). *Brunner*, 46 B.R. at 754-55. Section 523(a)(8) was a response to "a 'rising incidence of consumer bankruptcies of former students motivated primarily to avoid payment of education loan debts.' " *Id.*, (quoting the Report of the Commission on the Bankruptcy Laws of the United States, House Doc. No. 93-137, Pt. I, 93d Cong., 1st Sess. (1973) at 140 n. 14). This section was intended to "forestall students . . . from abusing the bankruptcy system." *Id.*

*Pena*, 155 F.3d at 1111; *Rifino*, 245 F.3d at 1088-89.

This Court follows the directive of the *Pena* Court by utilizing the three-prong *Brunner* test. *See, e.g., Gettle v. Sallie Mae Servicing Corp. (In re Gettle)*, 19 Mont. B.R. 59, 257 B.R. 583 (Bankr. D. Mont. 2000); *Marsh v. Moorehead College (In re Marsh)*, 19 Mont. B.R. 39, 257 B.R. 569 (Bankr. D. Mont. 2000). A debtor must prove all three elements identified in *Brunner* before discharge can be granted on grounds of undue hardship. *Mason*, 464 F.3d at 882; *Rifino*, 245 F.3d at 1087-88.

The first prong of the *Brunner* test requires that Leslie establish "that she cannot maintain, based on current income and expenses, a 'minimal' standard of living for herself and her dependents if forced to repay the loans." *Mason*, 464 F.3d at 882; *Brunner*, 831 F.2d at 396. The evidence shows that the total amount of the student loan debt in this case is $120,966.71, and Ex. B, E, H, K and N list loan payments totaling over $999. Leslie's Schedules I and J, Ex. 1 and 2, and her testimony show that her current expenses already exceed her income by $146.75, without any car payment and without any payment to the student loans.

Leslie reduced her rent to $550, but her hours have been cut back by 3 hours per week.

The Court finds the evidence is clear that Leslie cannot maintain, based on her current income and expenses, a minimal standard of living if forced to repay the $120,966.71 in student loan debt. Leslie lives conservatively already, and if she were forced to pay $999.08 per month according to Ex. 1 she would be left with just over $476 per month to live on. That would not pay her rent, or, alternatively, would not pay her food and transportation. The Court concludes that Leslie has satisfied the first prong of the *Brunner* test. *Mason*, 464 F.3d at 882. On the other hand, the evidence shows that Leslie states that she has the ability to pay NCT $50 per month, which this Court considers in deciding whether Leslie is entitled to only a partial discharge of debt under its equitable powers under 11 U.S.C. § 105(a). *Nys*, 446 F.3d at 947, n. 8

The second prong requires a debtor prove that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans. *Mason*, 464 F.3d at 882; *Brunner*, 831 F.2d at 396. These additional circumstances are meant to be objective factors which a court can consider when trying to predict a debtor's future income, but the debtor does not have a separate burden to prove "additional circumstances" beyond the inability to pay presently or in the future. *Mason*, 464 F.3d at 882-83, quoting *Nys*, 446 F.3d at 945. *Nys* provided the following list of "additional circumstances" a court may consider, including but not limited to:

> [ (1) ] Serious mental or physical disability of the debtor or the debtor's dependents which prevents employment or advancement; [ (2) ] The debtor's obligations to care for dependents; [ (3) ] Lack of, or severely limited education; [ (4) ] Poor quality of education; [ (5) ] Lack of usable or marketable job skills; [ (6) ] Underemployment; [ (7) ] Maximized income potential in the chosen educational field, and no other more lucrative job skills; [ (8) ] Limited number of years remaining in [the debtor's] work life to allow payment of the loan; [ (9) ] Age or other factors that prevent retraining or relocation as a means for payment of the loan; [ (10) ] Lack of assets, whether or not exempt, which could be used to

> pay the loan; [ (11) ] Potentially increasing expenses that outweigh any potential appreciation in the value of the debtor's assets and/or likely increases in the debtor's income; [ (12) ] Lack of better financial options elsewhere.

*Nys*, 446 F.3d at 947.

The evidence admitted at trial does not support factors numbered above (1), (2), (6), and (11). There is some evidence, but not compelling, of the presence of factors (3) (Lack of, or severely limited education), (4) (Poor quality of education); and (5) (Lack of usable or marketable job skills). Leslie has only a high school education, and her employment as a health care clerk earning under $12.00 does not reflect usable or marketable job skills which would indicate that her state of affairs is not likely to persist for a significant portion of the repayment period for the student loans. *Mason*, 464 F.3d at 882-83.

The evidence more strongly supports a finding that factors (6) (Underemployment), (7) (Maximized income potential in the chosen educational field, and no other more lucrative job skills), (8) (Limited number of years remaining in the Debtor's work life to allow payment of the loan), (9) (Age or other factors that prevent retraining or relocation as a means for payment of the loan), (10) (Lack of assets, whether or not exempt, which could be used to pay the loan), and (12) (Lack of better financial options elsewhere), indicate that her state of affairs is likely to persist for a significant portion of the repayment period for the student loans. *Mason*, 464 F.3d at 882-83. Leslie is 52 years old. Her current income is consistent with her work history as shown by her tax returns and Ex. C. She has a limited number of years before she is eligible for full social security benefits at age 67. She has no assets to repay the loans, no prospects for retraining or relocation as a means of repayment, and no better financial options elsewhere.

Leslie is not underemployed. She is in as good a position as a health care clerical worker

as can be hoped. This is not a case where the Debtor purposely chose to live a lifestyle that prevents her from repaying her student loans. *See Nys*, 446 F.3d at 946. Neither does the evidence suggest that Leslie had a reasonable opportunity to improve her financial situation, yet chose not to do so. *Nys*, 446 F.3d at 946; *Rifino*, 245 F.3d at 1089. In addition the overwhelming fact of the Great Recession which struck this nation, and the Flathead Valley, cannot be ignored when evaluating Leslie's employment prospects or chances for more lucrative earnings.

The fact that Leslie is the co-signor of the student loan notes for her son demonstrates that the policy behind the "undue hardship" requirement was not intended by Leslie as co-signer for her son's student loans. *Nys* discusses that Congress sought to prohibit a "garden variety" debtor from discharging student loans, especially when the "garden variety debtor will presumably use her loan-funded education to substantially increase her income in the near future." *Nys*, 446 F.3d at 944; *Rifino*, 245 F.3d at 1087. The Ninth Circuit explicitly stated: "In comparison, forcing debtors who cannot reasonably be expected to increase their future income to make payments on their student loans when it causes them to fall below a minimal standard of living constitutes an 'undue hardship.'" *Id.*

Leslie co-signed the student loans for Tyler. She did it so that he could finish college. The evidence shows that Leslie will not use her son's loan-funded education to substantially increase her income in the near future. The evidence shows that her income has no connection to her son's loan-funded education. The Ninth Circuit wrote:

> We will presume that the debtor's income will increase to a point where she can make payments and maintain a minimal standard of living; however, the debtor may rebut that presumption with "additional circumstances" indicating that her

income cannot reasonably be expected to increase and that her inability to make payments will likely persist throughout a substantial portion of the loan's repayment period.

*Nys*, 446 F.3d at 946.

This Court finds that Leslie has, by evidence of the above-listed additional circumstances, rebutted the presumption and shown by a preponderance of the evidence indicating that her income cannot reasonably be expected to increase, and that her inability to make payments, except for the $50 per month which she claims she can pay, will likely persist throughout a substantial portion of the loan's repayment period.  The Court concludes that Leslie has satisfied the second prong of the *Brunner* test except for $50 per month.

The third prong requires that the debtor has made good faith efforts to repay the student loans.  *Mason*, 464 F.3d at 884; *Pena*, 155 F.3d at 1114; *Brunner*, 831 F.2d at 396.  The Ninth Circuit wrote:

> "Good faith is measured by the debtor's efforts to obtain employment, maximize income, and minimize expenses." [*Pa. Higher Educ. Assistance Agency v. Birrane (In re Birrane)*, 287 B.R. 490, 499 (9th Cir. BAP 2002)] (citations omitted); *see also In re Pena*, 155 F.3d at 1114.  Courts will also consider "[a] debtor's effort – or lack thereof – to negotiate a repayment plan," *In re Birrane*, 287 B.R. at 499, although a history of making or not making payments is, by itself, not dispositive, *see id.* at 499-500.

*Mason*, 464 F.3d at 884.

The evidence, Leslie's testimony and Ex. 1, 3, 4, 5, and 6, shows that Leslie has been regularly employed, that she has made efforts during a recession to maximize her income, and minimize her expenses.  She does not own a vehicle and lives frugally.  She retains her employment as a health care clerk even when her employer cut back her hours.

Leslie's testimony and NCT's Ex. F, I, L, and O show that Leslie has made payments on

13

her student loan debts. She testified that the payments were made with her money, not Tyler's. NCT offered no evidence to the contrary.

As to whether Leslie has made an effort to negotiate a repayment plan, the Court first notes that it appears from the record that the student loans she owes to NCT are private loans, and therefore not eligible for the Ford Program. *See Nys*, 446 F.3d at 942; *see also* 34 C.F.R. § 685.100 & § 685.209. Thus, Leslie's failure to seek enrollment in the Ford Program is irrelevant. NCT's counsel admitted that income contingent repayment plans for its private loans are available, but that NCT has not discussed one with the Debtor. However, Leslie repeated at trial several times that she is willing to pay NCT $50 per month until she is 71. Leslie has proven by her testimony at trial a willingness to negotiate a repayment plan, but it appears from the record that NCT is not willing.

Based on Leslie's testimony and the uncontroverted evidence that she has made payments on the student loans, and her willingness to pay NCT $50 per month, the Court finds and concludes that Leslie has satisfied her burden to show under the third prong of the *Brunner* test that she has made efforts to obtain employment, maximize her income, minimize expenses, and she has made an adequate showing of effort to negotiate a repayment plan by offering to pay $50 per month. *Mason*, 464 F.3d at 884-85.

A partial discharge of student loan debt is permissible. *Nys,* 446 F.3d at 947 & n. 8; *In re Carnduff*, 367 B.R. 120, 128 (9th Cir. BAP 2007); *Saxman v. Educ. Credit Mgmt. Corp.*, *(In re Saxman)*, 325 F.3d 1168, 1178 (9th Cir. 2003) (holding that before a bankruptcy court can use its equitable powers under § 105(a) to partially discharge a student loan, it must find undue hardship). In determining whether a debtor has established entitlement to a partial or complete

discharge the court must decide the merits of her claim by applying the correct legal standard and all three *Brunner* prongs to the record. *Nys*, 446 F.3d at 938.

Given Leslie's stated ability and willingness to pay NCT $50 per month, the Court concludes that she is not entitled to a complete discharge of the $120,966.71 student loan debt under § 523(a)(8) for undue hardship, even though her Schedules I and J show that she is living at a monthly deficit without making any loan payments. However, the Court finds and concludes that Leslie has satisfied her burden under § 523(a)(8) for all student loan debt in excess of the $50 per month the evidence shows she is willing to pay.

Furthermore, in exercising its equitable powers under § 105(a) for a partial discharge, this Court will not require Leslie to work until she is 71 to continue paying NCT the $50 per month. According to the social security administration Leslie's age for full retirement benefits is 67[3], after which her social security benefits are exempt from execution. *See* MONT. CODE ANN. § 25-13-608(1)(b). That gives NCT the benefit of 15 years, until she turns 67, of monthly payments of $50, or a total of $9,000. Under § 105(a) this Court will except that amount from Leslie's discharge but will partially discharge any amount in excess of that $50 per month, and the Court in addition discharges Leslie from any obligation to pay interest or other charges on the $50 per month obligation.

The Court views this result as equitable because it grants Leslie substantial relief, while preserving her stated willingness to pay NCT for the student loans for another 15 years. The result is not inequitable to NCT because the evidence shows that it is unlikely ever to collect

---

[3]Leslie's full retirement age may be calculated at the social security website, including at www.ssa.gov/retirement/1960.html.

15

more than that amount from Leslie.  Finally, even with this partial discharge NCT retains all its rights to recover payment of the full amount of its student loan debt from the borrower, her son Tyler who, unlike Leslie, can be expected to use his loan-funded education to substantially increase his income in the future which is the stated purpose of the "undue hardship" standard. *Nys*, 446 F.3d at 943-44.

**CONCLUSIONS OF LAW**

1. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334 and 157.

2. This is a core proceeding to determine dischargeability of particular student loan debts under 28 U.S.C. § 157(b)(2)(I) and 11 U.S.C. § 523(a)(8).

3. Except for payments of $50 per month for a period of 15 years until the Plaintiff reaches her full social security retirement age, and any and all interest charges thereon, the Plaintiff satisfied her burden of proof under § 523(a)(8) and all three prongs of the test set forth in *Brunner*, 831 F.2d at 396, *Nys*, 446 F.3d at 945-47, *Mason*, 464 F.3d at 882-85, *Rifino*, 245 F.3d at 1087-88, and *Pena*, 155 F.3d at 1114, and has shown by a preponderance of the evidence that excepting student loan debts owed to NCT from her discharge would impose on her an undue hardship.

**IT IS ORDERED** a separate Judgment shall be entered in this adversary proceeding in favor of the Debtor/Plaintiff Leslie Kay Thompson and against the Defendant National Collegiate Trust ("NCT") in part; the sum of $50 in monthly payments from the date of Judgment is excepted from the Plaintiff's discharge under 11 U.S.C. § 523(a)(8) until the Plaintiff reaches the age of 67 or the monthly payments total $9,000, whichever occurs first; **PROVIDED,**

**HOWEVER**, that any and all other amounts owing by Plaintiff to NCT for student loan debt, including any and all interest and other charges accrued on the subject student loan debt, or which may accrue in the future, are discharged.

BY THE COURT

/s/ Ralph B. Kirscher
HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana